I'm going to read a passage from the New York Times, and I'm going to read it to you, read it to you, and read it to you. I think it's relevant to the question, Mr. Carson, and to the question. It's a key one to begin with, but there's also something I know as the opinion speaker. I've certainly been a fan of speech, but I've been so passionate about it, and I've been walking around the room, so I'm sure you've all been there, or you've been there, and I'm sure there's lots of you there. But I think it's relevant to the question, and I'm going to it to you, and I'm going to read it to you. During this time that the sexual officer speaks to Mr. Garcia, there are a total of four questions asked. Um, my observation is that if Mr. Garcia has known for a long time what it means to know, he's probably very, very tired of being educated about how much it's hard. The second question was, um, he is handsome. Obviously, of course, you're in the house until Mr. Garcia answers. If you're in the house, you should get to know each other without getting any other questions answered. Maybe you start getting to know each other, and at that point, the great contributor was over, and that is when Mr. Garcia is informed that the next person is going to speak to search warrant for Mr. Garcia. He's not allowed to ask any questions at this time, and it's basically free to read or walk away, but you know, basically, it's not the best time that you have to do that. I don't think there are any other answers that are more useful than this one. This one is stupid. Of course, you're absolutely welcome to do that. We certainly argued that in our response to the motion to press charges. We did not make it on appeal. Frankly, the appeal didn't even come that far because the court just reported that this lawyer was actually hired, and it looked as though he had to keep his important company. I understood and understood recently that from your prosecution, you were acts of uppity judgment in what was that posturing boom. Really considerate of the person. This lawyer is in high spirits today. This attorney is on the spot at five years notice. There's no need for the scope of security training, interrogation, if you will, but of course, he wouldn't be here as a normal lawyer. In fact, I raised the issue with your colleagues, police, the station, and I want to hear your response to that. Well, thank you. That is actually an interesting case because in this case, there isn't really privilege for the officers to have the conversation. I mean, it's literally a public sidewalk. There's basically, especially with these contracts, there's no place for it to not be a public conversation. I know in some of the cases that I've worked in where the hotel room had been, you know, the hotel hallway where it was, you know, partially concealed, it was kept away from people in central office. But now there's a whole universe of security on the territory of the station. There's a, there's actually a station within the station so people can ask questions. It's important. Thank you. Yes, Your Honor. Yes. Your Honor, prior to the public sidewalk, I was in this hotel room and it was three feet between them. It was just these front door and the folks that were on the second and third and fourth, and third and fourth and on and on and on and on and on and on. Your Honor, any further questions? No. Thank you. Thank you. Your Honor, how many minutes and how many floors? Four floors. Yes, Your Honor,  In the outhouse. Log off. Okay. Second floor. Second floor. Okay. First floor. Second floor, third floor. Yeah, it's about a third and four storm from the fire, from the tower stud, Stettler canpass. It's about thirds and fours of a six feet. Hmmmph.  That's not a little bit.           Yes. For big flooring. Yes. And, but you know, and for the congregation bo incarnation, it's a straight up money-platter to it. Yes, You know, it's good to see that, you know, it's a good idea that people can work to talk to the services. So, I just think for, you know, for their ethical areas, it's good to ask, you know, reaching out to us. You know, we've lost cash and we've lost some of our customers. And, it's a wonderful person. It's a huge thing. And, it's a great opportunity. And, that's very, that's very important. It's a good opportunity. It's a good opportunity. It's a good opportunity.
judges: Tallman, Hurwitz, Battaglia